BALL *v.* STATE.

Crim. 3990

, Opinion delivered June 15, 1936.

*Newell D. Fowler,* for appellant.

*Carl E. Bailey,* Attorney General, and *Guy E. Williams,* Assistant, for appellee.

McHANEY, J.   Appellant was convicted on a charge of assault with intent to kill, and sentenced to seven years in the State penitentiary.   The indictment charged that he committed an assault upon one Everett Hood with a deadly weapon, a gun, with the unlawful and felonious intent at the time to kill and murder said Hood.

Appellant is a negro and is a member of the Southern Tenant Farmers' Union.   On the night of January 16, 1936, a number of the members of said union, including appellant, all negroes, met at St. Peter's Church in Crittenden county, about five miles north of Earle. They had placed a guard at the door armed with a shotgun.   While the meeting was in progress, Mr. Hood, a deputy sheriff, in passing by the church, noticed a light and approached to see what was going on.   He saw two negroes at the door, and as he approached they started to run.   He asked the one with the gun what he was doing and was told that he was guarding the door.   He then took the gun from the guard, entered the church and most of the occupants fled, some through the back door and some through the windows.   He ordered the others to pass out by him.   Appellant was inside the rostrum, started walking towards Mr. Hood, and, when about half way down the aisle, he picked up from beneath a bench a double barrel shotgun.   According to Hood, the following occurred: ''and I said:   'What are you going to do with that gun; put it down.'   And when

I said that he made two or three steps toward me, at the time he was coming up with the shotgun; so he cocked the gun down like this, and he shoved it down on his leg, and I said: 'Boy, put that gun down.' I had that other negro's shotgun in hand, I took from the door-keeper, and when I said, why he didn't pay any attention to me; just started—I was just about the length of a bench, a seat, one of these benches, about eight feet long, and when he went to come up to me with the shotgun I throwed this negro's gun up and I hit the hammer of his gun, the cocked gun, and my foot slipped, and I had got a little closer to him, and as I was getting up off the floor, I grabbed the shotgun by both hands and started twisting the gun away from him and when I twisted the gun away from him I naturally knocked it out of his hands, and I pulled my pistol out—I had put the shotgun down—and I pulled my pistol out and put it in his ribs and told him to put up his hands; and there I was with all those negroes, and the two shotguns had disappeared, and he wanted to know what I was going to do with him, and I made him go out the door; and I had forgotten my flash light, and we went back and got the flash light.''

For a reversal of the judgment against him, appellant contends that there is no evidence in the record that the gun, with which it is charged he made the assault, was loaded; but that on the contrary, appellant himself testified that it was not loaded. The contention is that the undisputed proof is that the gun was not loaded, and that, therefore, a necessary element of the charge of assault is lacking, that is "coupled with present ability to commit a violent injury upon the person of another.'' Our statute, § 2330, Crawford & Moses' Digest, provides: "An assault is an unlawful attempt, coupled with present ability, to commit a violent injury on the person of another.'' In the early case of *Keefe v. State,* 19 Ark. 190, it was said: "If one present a loaded pistol at another, threatening to shoot him, and being sufficiently near for the shot to take effect, it is an assault. Under such circumstances, the pistol is presumed to have been loaded, and if it were not, this must be shown in defense.'' This case was cited with approval in *Wells v. State,* 108 Ark.

312, 157 S. W. 389. So, here, appellant drew a cocked shotgun on Hood. The presumption is it was loaded. He says it was not, but he is an interested party and his testimony cannot be said to be undisputed. The jury had a right to disbelieve such testimony which they did, as the court instructed them that if they found appellant's gun was not loaded, and that he did not have the means at hand with which to carry out the intent to murder or to inflict other bodily harm, they should find him not guilty. The gun used by appellant, as well as the one taken from the guard, disappeared during the melee, so it was not known to Hood whether it was loaded or not. A number of loaded shotgun shells were found on appellant at the time.

No question is raised regarding the instructions, but an examination thereof discloses that the court fully and fairly covered the law of the case, defining assault to kill, assault with deadly weapon and simple assault, the burden of proof, reasonable doubt and presumption of innocence. When we consider the facts set out above, we cannot say there was no substantial evidence on which to base the verdict and judgment. But, in view of the fact that appellant and others were peaceably and lawfully assembled in furtherance of what they considered their own welfare, and in view of the manner of entry by the deputy sheriff, Mr. Hood, coupled with the fact that no shot was fired by appellant, we are of the opinion that the sentence is excessive, and it will be reduced to one year in the penitentiary, the minimum punishment imposed by statute for assault with intent to kill.

As thus modified, the judgment will be affirmed. It is so ordered.